UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In re:

CHURCHILL ORTHOPEDIC
REHABILITATION, LLC,

Debtor.

Chapter 11 (Subchapter V)

Case No. 23-14874 (VFP)

Hon. Vincent F. Papalia

### SMALL BUSINESS DEBTOR'S PLAN OF REORGANIZATION

This Plan of Reorganization is presented to you to inform you of the proposed Plan for restructuring the debt of the Debtor, and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY [OBJECTION DATE/TIME].**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY [DEADLINE]. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: LAW OFFICES OF KENNETH L. BAUM LLC, 201 W. PASSAIC STREET, SUITE 104, ROCHELE PARK, NJ 07662.**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR [HEARING  DATE/TIME]  IN COURTROOM 3B OF THE UNITED STATES BANKUPTCY COURT FOR THE DISTRICT OF NEW JERSEY, 50 WALNUT STREET, NEWARK, NEW JERSEY 07102.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

LAW OFFICES OF KENNETH L. BAUM LLC
Attorneys for Debtor

   /s/  Kenneth L. Baum
KENNETH L. BAUM

Dated:  September 5, 2023

## **TABLE OF CONTENTS**

[TO BE PROVIDED]

## <u>SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS</u>

Through the date of this Plan, the Debtor has collected accounts receivable and paid its ordinary post-petition operating expenses, including maintaining and compensating an active staff of physical therapists and other employees.  Because the Debtor is not able to predict the definite outcome of its business success, the Plan pays:

1.	Administrative claims in full on the effective date, unless a different payment is otherwise agreed to by holders of administrative claims;

2.	The secured claim of Dr. Benjamin Burton as follows [TO BE PROVIDED].

3.	The secured claim of Kapitus Servicing, Inc, as follows [TO BE PROVIDED].

3.	The secured claim of  the U.S. Small Business Administration as follows [TO BE PROVIDED].

4.	General Unsecured Creditors will receive a *pro rata* dividend on their allowed claims from the Debtor's disposable income remaining after payment of all administrative, priority, and secured claims, for a period of ____ years.

# ARTICLE 1
## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

### 1.1.    Nature of the Debtor's Business.

The Debtor operates an orthopedic rehabilitation business and employs licensed professionals to administer physical therapy to its clients.

### 1.2.    History of Business Operations of the Debtor

The Debtor has been operating its business for approximately 20 years.

### 1.3    Filing of the Debtor's Chapter 11 Case.

On June 5, 2023, the Debtor filed a voluntary petition for relief under the Bankruptcy Code. The Chapter 11 case is pending in the Bankruptcy Court in Newark, New Jersey.

### 1.4.    Legal Structure and Ownership.

The Debtor is a New Jersey limited liability company.  Stephen Churchill is the president and sole member.

### 1.5.    Debtor's Assets.

For the fiscal year ending December 31, 2022, the Debtor had gross revenues totaling approximately $742,035.36.  As of the Petition Date, the Debtor's balance sheet reflects approximately $4,902.91 in assets and approximately $302,051.55 in liabilities, not including the debt to Dr. Benjamin Burton.

### 1.6.    Debtor's Liabilities.

The Debtor's secured creditors include Dr. Benjamin Burton ("**Burton**"), Kapitus Servicing, Inc. ("**Kapitus**"), and the U.S. Small Business Administration ("**SBA**").  The debt owed to the SBA totals $239,121.28. Unsecured claims against the Debtor include (i) accrued and unpaid trade and other unsecured debt incurred in the ordinary course of the Debtor's business, and (ii) unpaid amounts owed to the Debtor's vendors.

See **Exhibit A** for a list of all proofs of claims filed against Debtor's estate.

### 1.7.    Current and Historical Financial Conditions.
[TO BE PROVIDED].

For the fiscal year ending December 31, 2022, the Debtor had gross revenues totaling approximately $742,035.36.  Copies of the latest prepared unaudited Statement of

Operations, Profit & Loss Statement and Balance Sheet for the period ending July 31, 2023, are attached hereto as **Exhibit B**.

### 1.8. <u>Events Leading to the Filing of the Bankruptcy Case.</u>

The Debtor was severely impacted by the onset of the Covid-19 pandemic and corresponding government-mandated closures in March 2020. Faced with an immediate forced reduction in its business, as well as the uncertainties surrounding the virus and its impact on employees who are required to work in very close proximity with patients and colleagues alike, the Debtor elected to close its office for several weeks. During that time, however, the Debtor continued to pay its employees.

The Debtor was able to gradually re-open its office and welcome employees and clients back beginning in June 2020, but under markedly different conditions than in the past. In order to comply with Covid-19 best practices regarding social distancing and the like, patient treatment tables were spread sufficiently apart, which limited the number of clients that could be seen at the same time, and a substantial amount of time and resources were devoted to sanitizing tables and other treatment equipment.

### 1.9. <u>Events Leading to the Filing of the Bankruptcy Case</u>

The Debtor was eventually able to secure two (2) separate PPP loans in 2020 (which have since been re-paid), but the proceeds were used to help support operations on a go-forward basis. The substantial impact on the Debtor's cash flow from the first few months of the pandemic created a liquidity problem from which the Debtor has yet to fully recover.

Further exacerbating the long climb out of the early days of the pandemic is the Debtor's status as an out-of-network provider. Typically, as patients begin to satisfy their deductibles over the first few months of a calendar year, the Debtor begins to experience an uptick in business in or about the middle of the second quarter, which is usually the second-busiest quarter (behind the last few months of the year, when patients have satisfied their deductibles in full). Due to the closure of the Debtor's office in the spring of 2020 and the slow recovery from that shutdown, which was also caused by patients' reluctance to return to in-person rehabilitation, most patients were unable to meet their deductibles until much later in the year, if at all. This had a severe negative impact on the Debtor's revenues and profitability, which was not substantially ameliorated until vaccines became available in 2021.

At the same time the Debtor was addressing the fallout from the Covid-19 pandemic, it also had to defend a lawsuit filed by Burton in October 2020 against the Debtor in the Superior Court of New Jersey, Bergen County, Law Division, docketed as BER-L-006131-20 (the "**Burton Lawsuit**"), seeking, among other relief, monetary damages for an alleged breach of contract.

Defending that lawsuit in the ensuing 17 months caused the Debtor to divert a very substantial amount of time, which otherwise would have been devoted to the Debtor's

business operations, to corresponding with attorneys and gathering reams of information. It also caused the Debtor to pay a very significant amount of attorneys' fees, which hampered the Debtor's ongoing attempts to become profitable.

By Order dated January 25, 2022, the court in the Burton Lawsuit entered judgment against the Debtor in the amount of $2,051,847 (and against Stephen Churchill personally in the amount of $477,500). In furtherance of that judgment, Burton levied upon the Debtor's bank accounts and monies paid from insurance companies, which strangled the Debtor's cash flow and jeopardized its viability, including its ability to pay rent to its landlord.

### 1.10    Significant Events During the Bankruptcy Case.

By Order dated June 29, 2022 [Dkt. No. 33], the Court approved the Debtor's retention of Law Offices of Kenneth L. Baum LLC as its bankruptcy counsel.

By Order dated July 27, 2023, the Court approved the Debtor's retention of Aprio, LLP as Accountants.

The Debtor, as tenant, and Carriage IV Office Center, LLC Landlord, as landlord, are parties to a Lease Agreement dated  February 13, 2003, as amended (collectively, the "**Lease**"), for nonresidential real property located in a portion of the building known as 1086 Teaneck Road, Teaneck, New Jersey (the "**Premises**"), where the Debtor conducts its business.

With the Lease due to expire in less than a year, the Debtor desires a smaller space at the Premises that would potentially result in substantial savings in the Debtor's monthly rent obligations. To that end, the Debtor and the Landlord have entered into negotiations to amend the Lease to include a smaller, less expensive space.

The Debtor is poised to moved forward with a reorganization under subchapter V of the Bankruptcy Code that will preserve its business and the jobs of its employees, allow the Debtor to continue providing vital rehabilitation services to the surrounding community, and provide the best possible return for all stakeholders.

### 1.11    Projected Recovery of Avoidable Transfers [Choose option]

The Debtor estimates that up to **$_____**  may be realized from the recovery of fraudulent, preferential, or other avoidable transfers. While the results of litigation cannot be predicted with certainty and it is possible that other causes of action may be identified, the following is a summary of the preference, fraudulent conveyance and other avoidance actions filed or expected to be filed in this case:

[TO BE PROVIDED]

## ARTICLE 2

## THE PLAN

The Debtor's Plan must describe how its Creditors will be paid.  Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment.  For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired.  A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled.  If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote.  A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan.  Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan.  A class that is not impaired is deemed to accept the Plan.

### 2.1. Unclassified Claims.

Certain types of Claims are automatically entitled to specific treatment under the Code.  For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan does not place the following Claims in any class:

A.    Administrative Expenses

The Debtor must pay all Administrative Expenses in full.  If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense.  Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order.  If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1. If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2. If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan.

| e | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | The Debtor's ordinary expenses have been substantially paid in full as disclosed in the Monthly Operating Report. | Debtor will pay ordinary course claims in accordance with payment terms as agreed between the Debtor and creditor. |
| Administrative Tax Claim | $0.00 | N/A |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | The Debtor's goods received have been substantially paid in full as disclosed in the Monthly Operating Report. | Debtor will pay for goods received in accordance with payment terms as agreed between the Debtor and creditor. |
| Professional fees, as approved by the Bankruptcy Court | Law Offices of Kenneth L. Baum LLC (Debtor's counsel) $_____ (estimated)  Aprio LLP (Debtor's accountants) $_____ (estimated) | The Debtor will pay all allowed fees in accordance with, but no later than the later of: (i) the Effective Date of the Plan; or (ii) on a date mutually agreed upon by the parties. |

8

| Clerk's Office fees | Clerk's Office fees are estimated to be $0.00, or nominal | Paid in full on the Effective Date or as soon thereafter as practicable. |
|---|---|---|
| Other Administrative Expenses | None | The Debtor will pay all allowed expenses in accordance with, but no later, the later of (i) the Effective Date of Plan; (ii) on a date mutually agreed upon between the Debtor and the creditor; (iii) the entry of a final order allowing the expense. |
| Trustee:<br><br>Nancy Isaacson, Esq. | $ _____ (estimated) | Upon application under § 330 and after Bankruptcy Court approval, payment through the Plan as follows:<br>The Debtor will pay all allowed expenses in accordance with, but no later than the later of (i) the Effective Date of Plan; or (ii) on a date mutually agreed upon between the parties. |
| TOTAL | | |

B.      Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|

9

| N/A | N/A | N/A | N/A |
| --- | --- | --- | --- |
|  |  |  |  |

## 2.2    Classes of Claims and Equity Interests.

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### A.  Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code.  If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
| --- | --- | --- | --- | --- |
|  |  |  |  |  |

| 1 | *Secured claim of*:<br>**Kapitus Servicing, Inc**.<br>Collateral description:<br>:Filed UCC-1 Statement<br><br>Allowed Secured Amount =<br>$[TO BE PROVIDED]<br><br>Priority of lien=[TO<br><br>BE PROVIDED]<br><br><br>Total claim<br><br>(as filed) =<br><br>$ 89,644.30 | | **No** | [State whether impaired or unimpaired] | [TO BE PROVIDED]. |

| 2 | *Secured claim of*:<br>**U.S. Small Business Administration**<br><br>Collateral description =<br><br>Allowed Secured Amount =<br>$0.00<br><br>Total claim =<br><br>$_____ | | impaired | Allowed Secured Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under Section 506 of the Code.  If the value of the collateral or setoff securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. |
| 3 | *Secured claim of*:<br>*Dr*. Benjamin Burton<br><br>Collateral description:<br>UCC filing Statement.<br><br>Allowed Secured Amount=<br>$[TO BE PROVIDED]<br><br>**Total claim (as filed)=<br>$3,298,682.00** | | impaired | Allowed Secured Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under Section 506 of the Code.  If the value of the collateral or setoff securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. |

B.  Classes of Priority Unsecured Claims.

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The following chart lists all classes containing Claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| N/A | Priority unsecured claim pursuant to Section [insert]<br>Total amt of claims = $0.00 | [State whether impaired or unimpaired] | N/A |
| N/A | Priority unsecured claim pursuant to Section [insert]<br>Total amt of claims = $0.00 | [State whether impaired or unimpaired] | N/A |

13

C.  Class[es]of General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.  [Insert description of §1122(b) convenience class if applicable.]

The following chart identifies the Plan's proposed treatment of Class 4, which contains general unsecured Claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 4 | General Unsecured Class | Impaired | General Unsecured Creditors will receive a lump sum pro rata dividend on their allowed claim in any quarter where the Debtor's net profit exceeds $_____.  The term "net profit" is defined as all cash disbursements during the quarter.  The Subchapter V Trustee shall monitor Debtor's quarterly reports to determine if and when an additional disbursement is required. |

D.  Class[es] of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are Equity Interest holders.  In a partnership, Equity Interest holders include both general and limited partners.  In a limited liability company ("LLC"), the Equity Interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

The following chart sets forth the Plan's proposed treatment of the class[es] of Equity Interest holders: [There may be more than one class of Equity Interest holders in, for  example, a partnership case, or a case where the prepetition debtor had issued multiple classes of stock.]

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 5 | Equity Interest holders | No | Retain existing equity interest |

### 2.3. <u>Estimated Number and Amount of Claims Objections.</u>

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan. [Set forth amount and number of Claims in each class that will be objected to.]

| Class | Number of Claims Objected To | Amount of Claims Objected To |
|---|---|---|
|  | [TO BE PROVIDED] |  |
|  |  |  |

### 2.4. <u>Treatment of Executory Contracts and Unexpired Leases.</u>

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

Check all that apply:

[ ]  Assumption of Executory Contracts.

The Executory Contracts shown on Exhibit ___ shall be assumed by the Debtor. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any. Exhibit ___ also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

OR

[X ]  Assumption and Assignment of Executory Contracts and Unexpired Leases.

The Executory Contracts shown on **Exhibit C** shall be assumed by the Debtor and assigned to the party listed in that Exhibit. Assumption and assignment by the Debtor means that the Debtor will undertake the obligations under such contracts and unexpired leases, will cure defaults of the type that must be cured under the Bankruptcy Code, if any, and will assign the contract to the party listed.

15

If you object to the assumption and assignment of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption and assignment within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

OR

[  ] Rejection of Executory Contracts and Unexpired Leases.

The Executory Contracts shown on Exhibit _ shall be rejected by the Debtor.

Further, the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly shown on Exhibit _____, or not assumed before the date of the order confirming the Plan.

Rejection means that the Debtor has elected not to continue to perform the obligations under such contracts or leases.  If the Debtor has elected to reject a contract or lease, the other party to the contract or lease will be treated as an unsecured Creditor holding a Claim that arose before the bankruptcy was filed.

**[The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of an Executory Contract Is _____** .  Any Claim based on the rejection of an Executory Contract will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise.]

### 2.5.      Means for Implementation of the Plan.

On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor. The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date.

Payments to the holders of allowed Claims, on the terms set forth in this Plan, shall be made from the Debtor's ongoing operations and cash flow for a period of five (5) years after the Effective Date of the Plan.

### 2.6.    Payments.

If the Plan is confirmed under §1191(a), payments to Creditors provided for in the Plan will be made by the Trustee pursuant to §1194(a). Once the Trustee's service is terminated under § 1183(c), the Debtor shall make Plan payments except as otherwise provided in the Plan or in the order confirming the Plan.

If the Plan is confirmed under section § 1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the Trustee shall make all Plan payments to creditors under the Plan.

### 2.7.    Post-Confirmation Management.

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

| Name | Position | Compensation |
|------|----------|--------------|
| Stephen Churchill | President and Sole Member | [TO BE PROVIDED] |
| | | |
| | | |

### 2.8.    Tax Consequences of the Plan.

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

The following are the anticipated tax consequences of the Plan: [List the following general consequences as a minimum: (1) Tax consequences to the Debtor of the Plan; (2) General tax consequences on Creditors of any discharge, and the general tax consequences of receipt of Plan consideration after Confirmation.]

### 2.9. Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan

Debtor has provided projected financial information. Those projections are listed in **Exhibit D**.

### ARTICLE 3
### FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 3.1.    Ability to Initially Fund Plan.

The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date.

### 3.2.    Ability to Make Future Plan Payments And Operate Without Further Reorganization.

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan.

The Debtor has provided projected financial information. Those projections are listed in **Exhibit D**(referenced in § 2.9, above).

The final Plan payment is expected to be paid on [TO BE PROVIDED].

It is difficult to project with precision future income and expense because the Debtor has restarted its business since the events leading to the filing of the bankruptcy case.  The projections are conservative.  The Debtor is optimistic that it will have disposable income to satisfy the required payments under the Plan.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

## ARTICLE 4
## LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all Creditors who do not accept the Plan will receive at least as much under the Plan as such claimants would receive in a Chapter 7 liquidation.  A liquidation analysis is attached hereto as **Exhibit E.**

## ARTICLE 5
## DISCHARGE.

**5.1.  Discharge.**

**If the Plan is confirmed under § 1191(a),** on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b),** as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in section 523(a) of this title.

## ARTICLE 6
## GENERAL PROVISIONS.

### 6.1.    Title to Assets.

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case nder chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first.  Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 6.2.    Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 6.3.    Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4.    Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5.    Captions.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6.    <u>Modification of Plan.</u>

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### 6.7.    <u>Final Decree.</u>

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

### ARTICLE 7
### <u>ATTACHMENTS</u>

The following documents accompany the Plan [check those applicable, and list any other attachments here]:

[ ]    Debtor's Assets at Fair Market Value, annexed as Exhibit _____.

[ ]    Claims Filed, annexed as **Exhibit A**.

[ ]    Financial forecast for the Debtor, annexed as Exhibit ___.

[ ]    Debtor's most recent financial statements issued before bankruptcy, annexed as Exhibit ___.

[X]    Debtor's most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case, annexed as **Exhibit B**.

[ ]    Summary of the Debtor's periodic operating reports filed since the commencement of the Debtor's bankruptcy case, annexed as Exhibit ___.

[X]    Executory Contracts and Unexpired Leases, to be Assumed annexed as **Exhibit C** .

[ ]    Executory Contracts and Unexpired Leases to be Assumed and Assigned, annexed as Exhibit ___.

[ ]      Executory Contracts and Unexpired Leases to be Rejected, annexed as Exhibit ___.

[ ]      Tables showing the amount of cash on hand as of the Effective Date, and the sources of that cash, annexed as Exhibit ___.

[ ]      Liquidation Analysis, annexed as Exhibit ____.

[X]      Monthly Projections annexed as **Exhibit D.**

[X]      Liquidation Analysis, annexed as **Exhibit E.**

## ARTICLE 8
## FREQUENTLY ASKED QUESTIONS

**What Is Churchill Orthopedic Rehabilitation, LLC, the Debtor, Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of reorganization [or liquidation], the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. [Paragraph/Section] ___ lists all classes of claimants and their types of claims.

**Why Is Confirmation of a Plan of Reorganization [or Liquidation] Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization [or Liquidation]?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPARIED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** [Section/Paragraph] _____ of the Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is _____. Ballots should be mailed to the following address:

Law Offices of Kenneth L. Baum LLC
Kenneth L. Baum, Esq.
201 W. Passaic Street, Suite 104
Rochelle Park, NJ  07662

**How Do I Determine When and How Much I Will Be Paid?** In Article 2 of the Plan, the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

## ARTICLE 9
## DEFINITIONS

**9.1.**    The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan.  The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

**9.2.    Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**9.3.     Administrative Convenience Class:**  A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.4.    Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**9.5    Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.6.    Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.7.    Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.8.    Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code

**9.9.    Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.10.    Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11.    Bankruptcy Court**: The United States Bankruptcy Court for the District of New Jersey.

**9.12.    Bankruptcy Rules**:  The Federal Rules of Bankruptcy Procedure.

**9.13.    Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.14.    Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which Churchill Orthopedic Rehabilitation, LLC, is the Debtor-in-Possession.

**9.15    Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.16.    Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.17.    Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**9.18.    Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.19.    Confirmation Hearing**: The hearing to be held on _____, 20__ to consider confirmation of the Plan.

**9.20.    Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.21.    Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.22.    Debtor** and **Debtor-in-Possession**: [Debtor], the debtor-in-possession in this Chapter 11 Case.

**9.23.    Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.24.    Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.25.    Effective Date**: Pursuant to D.N.J. LBR 3020-1, the effective date of a chapter 11 plan is 30 days after entry of the order confirming the plan unless the plan or confirmation order provides otherwise.

**9.26.    Equity Interest**: An ownership interest in the Debtor.

**9.27.    Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.28.    Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.29.    IRC**: The Internal Revenue Code

**9.30.    Petition Date**: June 5, 2023, the date the chapter 11 petition for relief was filed.

**9.31.    Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.32.    Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.33.    Reorganized Debtor**: The Debtor after the Effective Date.

**9.34.    Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.35.    Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

**9.36.    Trustee**: Nancy Isaacson, Esq., the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**9.37.    Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Respectfully submitted,

By: */s/ Kenneth L. Baum*
        Law Offices of Kenneth L. Baum LLC
        Kenneth L. Baum, Esq.
        Counsel for Debtor
        Churchill Orthopedic Rehabilitation LLC

27

**EXHIBIT A**

[TO BE PROVIDED]

**EXHIBIT B**

[TO BE PROVIDED]

**EXHIBIT C**

[TO BE PROVIDED]

**EXHIBIT D**

[TO BE PROVIDED]

**EXHIBIT E**

[TO BE PROVIDED]